IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALICE ASHBURN, etc.,

                Plaintiff,        Case No. 3:06 CV 2367

-vs-

                                  <u>MEMORANDUM OPINION</u>

GENERAL NUTRITION
CENTERS, INC., et al.,

                Defendant.

KATZ, J.

      This matter is before the Court on plaintiff Alice Ashburn's Motion for Reconsideration of the Court's Memorandum Opinion and Order (Doc. 80). The Court's Opinion and Order (Doc. 79, hereinafter "Opinion") granted Defendant GNC's motion to exclude the plaintiff's expert, Donald H. Marks, MD, Ph.D, but denied the plaintiff's motion to exclude the defendant's expert, Richard B. Kreider, Ph.D. Because the plaintiff had an opportunity to address two of her three claims during an evidentiary hearing, and because her third claim lacks merit, the plaintiff's motion is hereby denied.

**I.    Issues**

      Plaintiff Ashburn raises three issues in her Motion for Reconsideration (Doc. 81). First, she argues that the Court's opinion is incorrect because it misapplies the criteria governing admissibility of expert testimony found in *Daubert v. Merrell-Dow Pharmaceuticals*, 509 U.S. 579 (1993), and ignores the precedential value of *In re: Meridia Products Liability Litigation*, 328 F.Supp.2d 791 (N.D. Ohio 2004), *aff'd* 447 F.3d 861 (6th Cir. 2006). Second, she alleges that the Court made a specific causation determination before that issue was properly before the Court. Finally, she claims

that the defendant's expert is incompetent to testify, and that the Court should have found as much during the *Daubert* evidentiary hearing.

II. **Background**

    A. *Daubert* **Standard**

This Court conducted a *Daubert* evidentiary hearing on August 23, 2007, to determine whether expert witnesses proffered by each party were competent to testify about the causal connection between creatine and hydration of the human body. The Court based its decisions on the legal standards mandated in Federal Rule of Evidence 702, as interpreted by the United States Supreme Court in *Daubert v. Merrell-Dow Pharmaceuticals*, 509 U.S. 579 (1993):

> Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable. *Kumho Tire Co., Limited. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10. The subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than subjective belief or speculation. *Id.* at 589-90. Further, Rule 702 requires that expert testimony assist the trier of fact, i.e., it must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." *Id.* at 591-92.

Opinion at 1-2 (quoting *In re: "Diet Drugs" (Phenermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, No. MDL 1203, 2001 WL 454586, at *5-6 (E.D. Pa. Feb. 1, 2001)). The plaintiff's expert was unable to meet this standard, while the defendant's expert was found competent to testify.

    B. **Plaintiff's Expert, Donald H. Marks, MD, Ph.D.**

Donald H. Marks, MD, Ph.D, is an experienced physician who currently maintains a clinical practice. Opinion at 3. He has also worked for pharmaceutical companies, creating protocols for epidemiologic studies and analyzing adverse effects to determine possible causal relationships. *Id.* At the *Daubert* hearing, he theorized that creatine can cause dehydration through fluid shift or "third

2

spacing of fluids." *Id.* The foundation offered for his opinion testimony consisted of (1) a "differential diagnosis" of Mr. Richardson's case (a process of elimination of possible causes of his dehydration), and (2) a statement in the autopsy report of the Wood County Coroner's Office that had been recanted. *Id.* at 4-5. Dr. Marks had not conducted any study of creatine prior to his involvement with this case. *Id.*

As a result of his testimony at the *Daubert* hearing, the Court determined that Dr. Marks' theories "were developed solely for this case, have not been tested in the market place of ideas by having been peer reviewed," and have not been the subject of epidemiological studies because Dr. Marks "does not believe testing his hypothesis on individuals with sickle cell trait would be ethical." *Id.* at 5. The Court therefore held Dr. Marks inexpert to offer an opinion in the case.

### C. Defendant's Expert, Richard B. Kreider, Ph.D.

Richard B. Krieder, Ph.D, was educated in exercise physiology and has extensive experience in the nutritional supplement field. Opinion at 7. He has conducted multiple creatine-related studies independent of this litigation and has published articles on those studies that have been subjected to peer review and have apparently been accepted within the scientific community. *Id.* Dr. Kreider's testimony at the *Daubert* hearing was based on testing, peer-reviewed research and writing, and his more than 20 years of experience in the specific subject area. *Id.* at 8. He was thus deemed qualified to testify on the limited issue of general causation.

### III. **Standard of Review**

Although a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, it is often treated as a motion made under Rule 59(e). *McDowell v. Dynamics Corp. of America*, 931 F.2d 380 (6th Cir. 1991); *Shivers v. Grubbs*, 747 F. Supp. 434 (S.D. Ohio 1990). The

purpose of a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) is to have the court reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst and Whinney*, 489 U.S. 169, 174 (1988). This rule gives the district court the "power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 450 (1982).

Generally, there are three major situations which justify a district court altering or amending its judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent a manifest injustice." *In re Continental Holdings, Inc.*, 170 B.R. 919, 933 (Bankr. N.D. Ohio 1994); *Braun v. Champion Credit Union*, 141 B.R. 144, 146 (Bankr. N.D. Ohio 1992), *aff'd*, 152 B.R. 466 (N.D. Ohio 1993); *In re Oak Brook Apartments of Henrico County, Ltd.*, 126 B.R. 535, 536 (Bankr. S.D. Ohio 1991). It is not designed to give an unhappy litigant an opportunity to relitigate matters already decided; nor is it a substitute for appeal. *Dana Corp. v. United States*, 764 F. Supp. 482, 488-89 (N.D. Ohio 1991); *Erickson Tool Co. v. Balas Collet Co.*, 277 F. Supp. 226 (N.D. Ohio 1967), *aff'd*, 404 F.2d 35 (6th Cir. 1968).

IV. **Discussion**

    **A. Misapplication of *Daubert* Standard and Competence of Defendant's Expert**

In her Motion for Reconsideration, Ashburn claims that this Court misapplied the *Daubert* criteria for evaluating expert witnesses, both by rejecting her witness and by qualifying the defendant's. Neither of these arguments meets the standard for reconsideration. Ashburn has pointed to no change in controlling law since the hearing. She has not presented any evidence that was previously unavailable. Her only potential basis for seeking reconsideration would be a "clear error

4

of law or … manifest injustice" resulting from the Court's decision. *Continental Holdings*, 170 B.R. at 933. Because the plaintiff has not demonstrated clear error by the Court, both *Daubert* claims are inapposite.

Most of Ashburn's *Daubert* assertions constitute disagreements with the Court's decision. Ashburn claims the Court erred by ignoring controlling precedent found in *In re: Meridia Products Liability Litigation*, 328 F.Supp.2d 791 (N.D. Ohio 2004), *aff'd* 447 F.3d 861 (6th Cir. 2006), and related case law. She objects that by declining to address the offered cases, the Court has "impliedly overturn[ed] years of established jurisprudence." Doc. 18 at 3. This is simply not the case. In fact, a more thorough reading of *Meridia* harms, rather than assists, the plaintiff's argument.

Under the *Meridia* line of cases, "an exert opinion, so long as it is based upon a reliable methodology, need not be predicated upon epidemiological studies." *Id.* Yet while they are not necessary, "[e]pidemiologic studies are the primary generally accepted methodology for demonstrating a causal relation between the chemical compound and a set of symptoms or a disease." *Meridia*, 328 F.Supp.2d at 800 (quoting *Conde v. Velsicol Chem. Corp.,* 804 F. Supp. 972, 1025-26 (S.D. Ohio 1992)). Because such tests are so often used in this type of case, "[w]hen an expert does not rely on the primary methodology for establishing causation, … that places a burden on the expert to explain his choice of methodologies." *Id.* In the case at bar, the Court did not require epidemiological evidence, but found, as in *Meridia*, that "other types of evidence upon which plaintiff might reasonably rely [were] equally absent." *Id.* (quoting *Soldo*, 244 F.Supp. 2d at 536). The Court struck the plaintiff's expert because his theory was neither tested nor peer reviewed, was developed solely in anticipation of this litigation, and was supported by insufficient foundational data. Opinion at 5-6. ("Where there is an absence of peer review and testing, the *Daubert* standards which have

5

been developed by the Courts cannot in the instant case be satisfied." *Id.* at 5.) That the Court declined to address *Meridia* in the Opinion thus has no bearing on its outcome and creates no "clear error" for reconsideration.

Ashburn raises a similar "clear error" argument regarding the defendant's expert. She relies on the Sixth Circuit Court of Appeals' affirmation of *Meridia*, which confirmed that a pharmacologist was expert with regard to "the effects of drugs on the body," but inexpert with regard to "effects of high blood pressure on the human body." *Meridia*, 447 F.3d 861, 868 (6th Cir. 2006). She attempts to analogize the expert in *Meridia* to the defendant's expert in this case, claiming that "his expertise in designing and conducting epidemiologic studies does not make him qualified to opine as to whether or not the admitted osmotic qualities of creatine can induce a sickle cell crisis in a person with sickle cell trait." Doc. 81 at 7. But as the *Meridia* court held, "the district court has 'considerable leeway' in making these sorts of determinations." *Id.* (citing *Kumho Tire. Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Consequently, Ashburn has raised no "clear error" or "manifest injustice" that would allow her claim to be reheard at this stage.

### B. Specific Causation

Pursuant to a scheduling order, the Court and parties in this case agreed to commence discovery and argument on the issue of specific causation only after general causation had been established. Ashburn's final argument is that the Court ignored that order by (1) rejecting her expert's theory on a specific causation basis and (2) deciding the issue of specific causation against her. Neither assertion is correct, nor did the Court err in addressing specific causation in its opinion. First, the Court did not make any factual determinations during the *Daubert* hearing. Second, the general causation arguments from the plaintiff's own expert and briefs were inextricable from references to

specific causation. Finally, even assuming that the Court had improperly addressed causation, the ruling would remain undisturbed because the plaintiff's expert also lacked sufficient foundational basis to testify about general causation.

Discussing specific causation, the Court found "there is proof lacking as to whether, when and how much Mr. Richardson consumed of the creatine supplement alleged to be the offending agent causing the onset of what developed into the cause of his death." Opinion at 4. It further remarked that such lack of proof did not support the "assertion by Plaintiff that, based on expert medical testimony, Mr. Richardson's ingestion of creatine was a substantial factor in causing his death." *Id.* Nowhere does the Court indicate that this language determines the *issue* of specific causation. The Court merely decided that Dr. Marks was inexpert to *testify* regarding specific causation. Were the case to proceed, the plaintiff would still be given a chance to prove specific causation, albeit without Dr. Marks' testimony

As Defendant GNC pointed out in its response to Ashburn's motion, some consideration of Mr. Richardson's specific situation was "necessitated by Plaintiff's briefing and Dr. Marks' opinion, which repeatedly referred to and relied on the circumstances of Richardson's demise." Doc. 82 at 4. By his own admission, the only valid basis for Dr. Marks' theory was a "differential diagnosis of Mr. Richardson's case." Opinion at 5. Had the Court excluded the evidence of this differential diagnosis, it would have excluded Dr. Marks' "sole case study," and thus would have left Dr. Marks with an even more meager evidentiary basis from which to derive his opinion. Consequently, failure by the Court to address specific causation would only have weakened the foundation of Dr. Marks' testimony.

7

Moreover, even had the Court made an incorrect determination regarding specific causation, Dr. Marks still would have been found inexpert to testify in the present case. Without the particular evidence of Mr. Richardson's case, the evidentiary basis for Dr. Marks' opinion on general causation would consist only of a later-recanted coroner's opinion. Opinion at 4-5. Although an expert may lack the foundational basis to testify to a particular occurrence of a phenomenon, he may still establish a sufficient basis to testify that such a phenomenon can occur in the abstract. Dr. Marks was unable to establish either basis in this case and thus was properly precluded from serving as an expert witness.

V. **Conclusion**

For the reasons stated herein, the plaintiff's Motion for Reconsideration is hereby denied (Doc. 80).

IT IS SO ORDERED.

   S/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE